IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| TRACEY A. BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 2:05-0091 |
| ) | JUDGE HAYNES |
| HAROLD WILLIAMS, individually and ) | |
| in his official capacity, JIMMY AUSTIN, ) | |
| SMITH COUNTY SHERIFF'S ) | |
| DEPARTMENT and SMITH COUNTY, ) | |
| TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff, Tracey A. Buchanan, filed this action under 42 U.S.C. § 1983 against the Defendants: Harold Williams, individually and in his official capacity as deputy sheriff of Smith County; Jimmy Austin, a Tennessee citizen; the Smith County Sheriff's Department and Smith County, Tennessee. Plaintiff asserts claims for violations of her rights under Fourth and Fourteenth Amendments of the United States Constitution and for a conspiracy to violate those rights under 42 U.S.C. § 1985. Plaintiff also asserts pendent state law claims for conversion, intentional and negligent infliction of emotional distress, negligence and civil conspiracy. Plaintiff's claims arise out of the seizure of her automobile and its contents as well as a search of her purse by the Defendant Williams, who was acting as a Deputy Sheriff of Smith County when he conducted these searches and seizures, in concert with the Defendant Austin.

Before the Court are the Defendant Williams' and Smith County Defendants' motion to dismiss or for summary judgment (Docket Entry No. 20) and the Defendant Austin's motion for summary judgment (Docket Entry No. 23). In their motions, Williams and the Smith County

Defendants argue, in sum: (1) that Plaintiff's state law claims fall within the Tennessee Governmental Tort Liability Act, ("TGTLA") Tenn. Code Ann. § 29-20-100 et seq. over which state courts have exclusive jurisdiction; (2) that the Smith County Sheriff's Department is not a proper party for Plaintiff's Section 1983 claims; (3) that with Smith County as a Defendant, Plaintiff's Section 1983 claim against Williams in his official capacity should be dismissed as unnecessary; (4) that Williams, in his individual capacity is entitled to qualified immunity; (5) that Smith County cannot be held liable under Section 1983 due to the lack of unlawful policy, custom or practice; and (6) that punitive damages against Smith County are unavailable as a matter of federal law. The Defendant Austin's motion argues in essence, that proof is insufficient to support a judgment on Plaintiff's federal and state claims against him.

Plaintiff responds that her proof is sufficient to support a judgment against all Defendants on all claims and that her federal rights were clearly established at the time of the Defendants' acts.

## A. Review of the Record[1]

Prior to the search and seizure at issue, Plaintiff and Defendant Austin had a personal relationship. On July 29, 2004, Austin, a former deputy sheriff of Smith County, Tennessee sued Plaintiff in the General Sessions County of Smith County, Tennessee and obtained a judgment against her in the amount of $4,355.87. To enforce his judgment, Austin secured a writ of execution

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that there are material factual disputes. Thus, this section does not constitute a findings of fact under Fed.R.Civ.P. 56(d).

2

from the General Sessions Court of Smith County, Tennessee. On October 8, 2004, the writ was issued to the Wilson County Sheriff's department for Plaintiff's 2000 Mercury Cougar.

At Austin's request, Williams, a deputy sheriff of Smith County, traveled to Plaintiff's residence in Davidson County, Tennessee to serve and execute the writ. Williams seized Plaintiff's 2000 Mercury Cougar that contained her purse, antique clock, jewelry box and other personal property. Austin accompanied Williams in this seizure of Plaintiff's personal property and drove Plaintiff's vehicle to the Smith County Sheriff's Department. Austin later told Plaintiff that he went to the jail to get an officer to go with him to serve the writ and to seize her automobile and that Williams told him that he would go. (Docket Entry No. 17, Buchanan Deposition at p. 84).

It is disputed whether these Defendants allowed Plaintiff to retrieve her personal property on the day of the seizure. Austin later told Plaintiff that he learned from Williams that she had no money in her purse on the day of the seizure. Plaintiff later recovered her jewelry box and antique clock that were damaged. A few days after the seizure of Plaintiff's vehicle, Austin told Plaintiff that he and Williams searched the trunk of her vehicle. Id. p. 102. Austin was not employed as a deputy of Smith County at the time of the seizure. (Docket Entry No. 33, Bane Deposition at p. 27).

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic

3

Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the

4

required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrating the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be

5

granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation

6

omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989. Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1.    Complex cases are not necessarily inappropriate for summary judgment.

7

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed

8

upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As to the seizure of her vehicle and its contents, Plaintiff contends that although a levy on a writ of execution places the debtor's personal property in the custody of the county sheriff, under Tennessee law, the Smith County officials lacked the legal authority to seize her vehicle because Plaintiff's vehicle was located in Davidson County, Tennessee.

Of the Defendants' several contentions, the Court addresses first whether the Smith County Sheriff's Department is a proper party for this Section 1983 action. "[P]ersons" who are subject to an action under 42 U.S.C. § 1983, must be a "bodies politic and corporate." Monell v. Dept. of Social Servs., 436 U.S. 658, 688 (1978); Mumford v. Basinski, 105 F.3d 264, 267 (6th Cir. 1997); Foster v. Walsh, 864 F.2d 416, 418 (6th Cir. 1988)(per curiam). Sheriff's departments and police departments are not "bodies politic." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994)(a police department is not a person for purposes of § 1983); Timberlake by Timberlake v. Benton, 786 F.Supp. 676, 682-83 (M.D. Tenn. 1982). The Court concludes that Plaintiff's claim against the Defendant Smith County Sheriff's Department is not actionable under federal law.

As to the Plaintiff's Section 1983 claims against Defendant Smith County, unlike states, counties are persons who may be liable under § 1983 for their illegal acts or those of their employees, but only under certain conditions, where:

9

> [the employee's] action . . . implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[;]
>
> [There is] official municipal policy of some nature[; or]
>
> [The] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . .

Monell., 436 U.S. at 690, 691, 694. In a word, "the Monell Court held that only deprivations visited pursuant to municipal 'custom' or 'policy' could lead to municipal liability" under § 1983. City of Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985).

As to the quantum of proof required to establish liability of local governmental units under Monell, the plurality opinion of four Justices in Tuttle stated:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

Id. at 823-24 (footnote omitted).

Later, in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Supreme Court, in another plurality opinion, held that the single decision of an authorized municipal decisionmaker, the district attorney, may be considered to set municipal policy and thereby be the basis of municipal liability under § 1983.

> If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the

10

fundamental purpose of § 1983.

Id. at 481 (emphasis added).

In a third plurality opinion, the Supreme Court addressed whether a single official has policymaking authority for a municipality is a question of state law for the court. City of St. Louis v. Praprotnik, 485 U.S. 112, 124-26 (1988). As to the factors to consider, if state law is unclear, the plurality opinion in Praprotnik states:

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 127. Accord Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989) (reaffirming Praprotnik that the issue of who possesses final policymaking authority is to be resolved as a question of state law before § 1983 liability can be imposed before the issue goes to the jury). Yet, a prerequisite for municipal liability is that the officer's predicate acts must have violated the § 1983 plaintiff's federal rights in Barber v. City of Salem, 953 F.2d 232, 235-36 (6th Cir. 1992).

Under Tennessee law, the county sheriff has the statutory duty to "[e]xecute and return according to law, the process and orders of the courts of record of this state and of officers of competent authority, with due diligence, when delivered to the Sheriff for that purpose." Tenn. Code Ann. §§ 8-8-201(a)(1). See also Tenn. Code Ann. § 8-8-201(a)(2)(B)(ii) and (a)(4). Yet, this authority extends to execute writs "within the county." Tenn. Code Ann. § 8-8-201(a)(5). Any legal liability arising out of a deputy sheriff's performance of his duties is legally attributable to the

11

County. Tenn. Code Ann. § 8-8-302.[2] As applied here, the writ of execution was issued to the Smith County Sheriff's Department. Williams, as a deputy sheriff, executed the writ and his subsequent seizure of Plaintiff's automobile and its contents was an act for the County. Thus, the Court concludes that under state law, Williams' acts were the acts of Smith County and qualify him as the County's decisionmaker in this instance. This single act of a sheriff is sufficient to represent a decision of the County under federal law. See also Heflin v. Stewart County, 958 F.2d 709, 716 (6th Cir. 1992); Marchese v. Lucas, 758 F.2d 181, 189 (6th Cir. 1985). Thus, the Court concludes Smith County is a proper Defendant, but Plaintiff is not entitled to punitive damages against the County on her Section 1983 claims as a matter of law. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981).

The Supreme Court has held that the Fourth Amendment protects citizens against government seizures of a citizen's property without legal process. Sodal v. Cook County, 506 U.S. 56, 68-69 (1992). A "seizure" of property within the meaning of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property" for which the person has a reasonable expectation of privacy. Id. at 62-63 (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). The Sixth Circuit has likewise so held. Thomas v. Cole, 304 F.3d 563, 570-71 (6th Cir. 2002).

In a § 1983 action, the threshold question of reasonableness of a search and/or seizure is to be resolved by the Court. Hunter v. Bryant, 502 U.S. 224 (1991). The Court engages in an initial review of the search or seizure for its objective reasonableness. Anderson v. Creighton, 483 U.S. 635 (1987). For qualified immunity purposes, the right at issue must be clearly established at the

---

[2]This statute is quoted infra at p. 16.

12

time of the violation, but "it need not be the case that the very action in question has been previously held unlawful, in light of the pre-existing law. The unlawfulness must be apparent." Hinchman v. Moore, 312 F.3d 198, 304 (6th Cir. 2002).

As to the Fourth Amendment right, the Court concludes that Sodal and Thomas establish Plaintiff's Fourth Amendment right not to have her property taken without lawful process, as clearly established rights. Moreover, Tennessee law had long been established by Smith v. United States Fire Ns. Co., 150 S.W.2d 97 (Tenn. 1912), wherein the Tennessee Supreme Court held that "any property situated within a given territory, which is subject to seizure under execution, is subject to the lien thereof, and where the writ is confined to the county where issued, the lien is likewise restricted. We therefore hold that the lein of an execution attaches only to property located in the county to which the execution is directed. An execution issued to one county will not fix a lein on the debtor's personalty in another."

Plaintiff's proof is that Williams and Austin knew Plaintiff's car was located in Davidson County, and his seizure of her vehicle without legal authority establishes a Fourth Amendment violation. The Court concludes that Plaintiff's Fourth Amendment rights can support a judgment.

As to Plaintiff's due process claim, when a plaintiff has a claim against government officials under state law for a loss of personal property, this loss does not state a claim cognizable under the Due Process Clause where there is a viable state remedy for the loss, Parratt v. Taylor, 451 U.S. 527, 543-44 (1981),[3] even if it were an intentional act to deprive the plaintiff of his property. Hudson v. Palmer, 468 U.S. 517(1984). The Supreme Court's holding in Parratt does not apply to an attack upon an allegedly defective state system or procedure that violates the plaintiff's constitutional rights.

---

[3]Parratt was overruled on other grounds in Daniels v. Williams, 474 U.S. 327 (1986).

13

Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). The Sixth Circuit held that to qualify for this exception, the plaintiff must meet certain threshold requirements.

> Under our recent decision in Vicory v. Walton, 721 F.2d 1062 (6th Cir. 1983) a plaintiff must plead and prove that available state remedies are inadequate or systemically defective in order to state or prove a proper procedural due process claim under section 1983 for deprivation of property. Plaintiff must prove the due process element of the wrong as well as the property deprivation element, and in this case, he has failed to show that Michigan's administrative and judicial remedies are inadequate or that they do not provide adequate process to remedy the constitutional violation claimed.

Campbell v. Shearer, 732 F.2d 531, 532 (6th Cir. 1984).

Tennessee's statutory remedy has been found to be an adequate state remedy by the Sixth Circuit. In Brooks v. Dutton, 751 F.2d 197 (6th Cir. 1985), wherein a state court prisoner sued under § 1983 to recover certain personal property that had been lost, the Sixth Circuit stated:

> We believe that the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted, see Tenn. Code Ann. § 9-8-207, and in the absence of resort to state remedies, we do not believe that a federal court may assert jurisdiction.

Id. at 199.

The Court concludes that Plaintiff's due process claim does not qualify under this exception because Plaintiff has not shown her state law remedies under TGTLA for the claims covered by TGTLA to be inadequate.

As to Plaintiff's § 1985 claim, a private person is acting under color of state law for the purpose of a § 1983 action, where the private party is charged with a conspiracy with a state official.

> As the Court of Appeals correctly understood our cases to hold, to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

14

Dennis v. Sparks, 449 U.S. 24 27-28 (1980) (citation omitted).

"To establish a claim under 42 U.S.C § 1985, a plaintiff must prove: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. Plaintiff must also establish that the conspiracy was motivated by a class-based animus." Johnson v. Hills & Dales General Hospital, et al., 40 F.3d 837 at 839. (citations omitted). Here, there is ample proof of Austin and Williams acting in concert in this unlawful seizure. Thus, Plaintiff's proof is sufficient to support a judgment in her § 1985 claim against the remaining Defendants.

As to Plaintiff's state law claims against Williams and Smith County, some of those claims, such as the negligence and negligent infliction of emotional distress claims, qualify under Tennessee Government Tort Liability Act, ("TGTLA") Tenn. Code Ann. § 29-20-101 et seq. that waives the County's state law immunity from such claims and provides a remedy. Tenn. Code Ann. § 29-20-205. The Court declines to exercise its supplemental jurisdiction over those claims for the reasons stated in Beddingfield v. City of Pulaski, 666 F.Supp. 1064 (M.D. Tenn. 1987), *rev'd on other grounds* 861 F.2d 968 (6th Cir. 1988). The Beddington ruling on declination to entertain TGTLA claims retains its viability. Gregory v. Shelby County, Tennessee, 220 F.3d 433, (6th Cir. 2000); Fromuth v. Metropolitan Gov't. Of Nashville, Davidson County, Tennessee, 158 F.Supp.2d 787, 789 (M.D. Tenn. 2001); Spurlock v. Whitley, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997) *aff'd sub. nom* Spurlock v. Satterfield, 167 F.3d 995 (6th Cir. 1999).

15

Yet, some of Plaintiff's state law claims against Williams and Smith County are not covered by TGTLA's waiver of immunity because the TGTLA does not waive a county's state law immunity for certain torts that include "interference with contract rights" and "invasion of civil rights." Tenn. Code Ann. § 29-20-205(2). Yet, this statutory exception is limited to the claims specified in subsection 205(2). Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 83-84 (Tenn. 2001). The Tennessee Supreme Court, however, made it clear that "if a specific or special statute provides for a remedy and waiver of immunity for injuries that are expressly excluded from the operation of [TGTLA] then these remedies would not be affected by the [TGTLA] because they cannot conflict with the statutory scheme of the [TGTLA] and are separate from it, regardless of whether these statutes were enacted before or after [TGTLA]." Jenkins v. Loudon County, 736 S.W.3d 603, 608 (Tenn. 1987) (abrogated on other grounds Limbaugh, 59 S.W3d at 83 that TGTLA intended to exclude all intentional torts).

Moreover, as stated earlier, the Smith County is liable under state law to "[a]nyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided that the deputy is, as the time of such occurrence, acting by virtue of or under color of the office." Tenn. Code Ann. § 8-8-302. Thus, under this statute, the County remains liable on Plaintiff's state law claims for conversion and intentional inflection of emotional distress and Plaintiff's proof satisfies the requirements of the conversion claim. H & M Enterprises, Inc. v. Murrary, 2002 WL 598556 at *3 (Tenn. Ct. App. April 17, 2002), but not for a claim of intentional infliction of emotional distress that requires proof of conduct that is "so outrageous that it cannot be tolerated by civilized society" and that "resulted in serious mental injury to the plaintiff." Lourcey

16

v. Estate of Charles Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004)(citation omitted). Here, the origin of the seizures was a state court judgment and writ of execution. In addition, a civil conspiracy is not an independent state law claim. Swafford v. Memphis Individual Practice Assn., 1998 WL 281935 *11 (Tenn. Ct. App. June 21, 1998).

Accordingly, the Defendant Smith County Sheriff Department's motion for summary judgment (Docket Entry No. 20) should be granted on all claims. The Defendant Williams' and Smith County's motion for summary judgment should be granted as to Plaintiff's Fourteenth Amendment Due Process claims and federal law claims for punitive damages and Plaintiff's state law claims for negligence, negligent and intentional infliction of emotional distress and civil conspiracy. The Defendant Williams' and Smith County's motion for summary judgment (Docket Entry No. 20) should be denied as to Plaintiff's Fourth Amendment claims and her state law conversion claims against these defendants. The Defendant Austin's motion for summary judgment (Docket Entry No. 23) also should be granted on Plaintiff's Due Process intentional infliction of emotional distress and civil conspiracy claims, but should otherwise be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 6th day of June, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge